**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

*Brian Manookian, Manookian PLLC,
Afsoon Hagh, and Hagh Law PLLC,  Appellants*

*v.*

*Trustee Jeanne Ann Burton, Appellee*

**Case No. 24-5139**

On Appeal from
Burton v. Hagh Law PLLC, et al.
Case No. 3:23-cv-00392
U.S. District Court Judge Aleta A. Trauger

**BRIEF OF APELLANTS**

John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Appellants*

1

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure and Sixth Circuit Rule 26.1, counsel for Appellants certifies that no party or debtor to this appeal is a subsidiary or affiliate of a publicly owned corporation and no publicly owned corporation that is not a party to this appeal has a financial interest in its outcome.

# TABLE OF CONTENTS

I.    TABLE OF AUTHORITIES .............................................4

Cases ....................................................................4

Statutes ................................................................4

Federal Code of Conduct.........................................4

Treatises ...............................................................4

II.   JURISDICTIONAL STATEMENT................................5

III.  STATEMENT OF THE ISSUES...................................6

IV.  STATEMENT OF THE CASE ......................................8

V.   SUMMARY OF THE ARGUMENT.............................18

VI.  ARGUMENT ..........................................................18

A.   The Bankruptcy Judge's Refusal to Disclose Ex Parte Conversations Alone Warrants Disqualification........18

B.   The Bankruptcy Judge's Actions in Response to Efforts to Discover the Content, Identities, and Extent of Ex Parte Communications Warrant Disqualification......24

C.   The Bankruptcy Court's Reliance on a Vacated Order Constitutes Legal Error and Further Warrants Recusal. ..............................................................26

D.   Recusal Is Even More Warranted in a Bench Trial, Where the Court Serves as Finder of Fact. .................27

VII.  CONCLUSION .....................................................27

# I.    <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Alexander v. Primerica Holdings, Inc.,</u> 10 F.3d 155 (3d Cir. 1993)..............................................................................................27

<u>Health Servs. Acquisition Corp. v. Liljeberg</u>, 796 F.2d 796, 800 (5th Cir. 1986).............................................................................................20

<u>In re Haas</u>, 292 B.R. 167 (Bankr. S.D. Ohio 2003)................................20, 22

<u>Liteky v. United States</u>, 510 U.S. 540 (1994)................................................22

**Statutes**

28 U.S.C. § 455...........................................................................10, 21-22, 27

**<u>Federal Code of Conduct</u>**

Code of Conduct for United States Judges, Canon 3...................10, 18-20, 24

**<u>Treatises</u>**

*Recusal: Analysis of Case Law Under 28 U.S.C. §§ 455 & 144* (Fed. Jud. Ctr. 2002)....................................................................................................27

## II.    <u>JURISDICTIONAL STATEMENT</u>

Appellants Brian Manookian, Manookian PLLC, Afsoon Hagh, and Hagh Law PLLC, Appellants ("Appellants") appeal from the United States District Court for the Middle District of Tennessee's Memorandum and Order dated January 11, 2024 which affirmed the Bankruptcy Court's denial of Appellants' Motion to Disqualify Bankruptcy Judge Charles Walker.

The District Court had jurisdiction over the matter under 28 U.S.C. § 158(a)(1), either as a final order or "with leave of court", which the District Court granted.  Memorandum and Order, RE 15, Page ID #1.

The Court of Appeals has jurisdiction over this matter pursuant to 28 U.S.C. § 1291 and 1292.  Following the District Court's opinion on January 11, 2024, Appellants timely filed their Notice of Appeal on February 9, 2024. Notice of Appeal, RE 16. A series of stays allowing the Parties to mediate this matter subsequently occurred, with the Court identifying May 29, 2024 as the date to file Appellants' Opening Brief.

## III.   <u>STATEMENT OF THE ISSUES</u>

1.      Whether the Bankruptcy Court erred in failing to recuse itself (and the District Court erred in affirming that decision) where the Bankruptcy Judge belatedly revealed, but declined to detail, its receipt of and participation in multiple *ex parte* communications about this litigation with one or more attorneys representing parties in this litigation; and where the Bankruptcy Judge continues to decline to reveal the substance, date, and parties to each of the *ex parte* communications.

2.      Whether the Bankruptcy Court erred in failing to recuse itself where it quashed a subpoena to itself seeking to determine the specifics of the Court's *ex parte* communications and, in that Order, articulated additional biases and prejudices against the moving party; and, further directly stated that matter was now "tainted" against Appellants in this proceeding.

3.      Whether the Bankruptcy Court erred in basing its written recusal decision in this case on a *vacated* Tennessee state court order about one of the parties to this litigation – a highly prejudicial order issued by a state-court judge who was then disqualified from presiding in that action due to actual or perceived bias, and involved judgments about the character of a

witness and party to this matter – in which the Bankruptcy Judge sits as the fact-finder.

## IV.   <u>STATEMENT OF THE CASE</u>

### A.   The Bankruptcy Court Engages in Ex Parte Communications About a Litigant

This is an adversary proceeding within a bankruptcy filed by the law firm of Cummings Manookian.  The bankruptcy was filed on November 6, 2019 and the adversary proceeding commenced shortly thereafter on January 8, 2020.  The bankruptcy and adversary proceedings are presided over by the Honorable Charles M. Walker.

On March 17, 2002, the Bankruptcy Judge opined from the bench that Mr. Manookian was the critical witness to both of the proceedings, stating that "most of this is going to be driven by additional information that's available, not to the Trustee at this moment, but is locked away deep inside Mr. Manookian's brain somewhere." (Appendix, RE 10-1,  Page ID# 141). Judge Walker went on to state that, with respect to discovery, "Mr. Manookian holds the keys to the kingdom." *Id.*

As the hearing progressed, the Bankruptcy Court ordered, over the objection of Appellants including Co-Defendant Hagh Law, that certain depositions involving Brian Manookian be held in a secured location in the courthouse.  Appellants raised routine, logistical objections to this directive, primarily about parking and cost to travel downtown instead of taking depositions at attorneys' offices.  (Appendix, RE 10-1,  Page ID# 104-197).

8

Surprisingly, in order to justify its rationale for this Order, the Bankruptcy Court raised what it termed the "100 pound gorilla in the room on that issue," namely, what Judge Walker believed to be Manookian's "past behavior before the tribunals." (Appendix, RE 10-1, Page ID# 94).

The Bankruptcy Court then said "I've had at least two lawyers call the Court and say they don't feel comfortable if your client is going to appear, and, you know, the Court takes those concerns very seriously and makes no conclusion on whether they are valid, they are perceptions which drive behaviors of other parties." *Id*.

At that hearing, well over a year into bench-trial cases over which he would preside, Judge Walker floored Appellants by casually admitting having participated in multiple *ex parte* conversations regarding Brian Manookian, the same very individual he had just identified as the key witness in those cases; but moreover, the Court then began holding forth on why it found Brian Manookian to be a particularly dangerous or unstable litigant: "[Brian Manookian's] past behavior before tribunals" justify ordering that depositions be conducted at the Courthouse over "security concerns" about Mr. Manookian.

As explained below, the Court's comments were not only factually wrong – Mr. Manookian was a successful trial attorney who had conducted

hundreds of depositions without incident – they betrayed an extrajudicial animus toward the very person that Judge Walker has gone to great lengths to identify as the central factual witness in this case.

And that animus can solely be based on the Court's *ex parte* communications; indeed, Judge Walker himself identified those communications as the basis of his views toward Mr. Manookian, only after the fact relying on a *vacated* state trial order to justify his expressed judgments about a litigant. Unfortunately, as briefed below, the Court declined in the March 17, 2022 hearing – and continues to refuse – to provide any meaningful detail about its *ex parte* communications about Mr. Manookian – a key party and witness in this case. *See* (Appendix, RE 10-1, Page ID# 94).

**B.    The Bankruptcy Court Declines to Disclose the Substance of its Ex Parte Communications or Promptly Rule on a Motion to Disqualify**

After obtaining the transcript of the hearing, Appellants promptly filed a motion asking the Court to disqualify itself and detail the dates, substance of, and parties to each of its *ex parte* communications, pursuant to 28 U.S.C. § 455(a) & (b)(1) and Canon Three of the Code of Conduct for Federal Judges (prohibiting judges from engaging in *ex parte* communications about a pending matter and, in the event an unauthorized *ex parte* communication

is received, requiring prompt disclosure of the subject matter and an opportunity for the parties to respond). (Appendix, RE 10-1, Page ID# 198).

Rather than ruling on the motion or making the compulsory disclosure, the Court set an evidentiary hearing, on its own initiative, calling for "[p]resentation of evidence" on the motion, but not until more than six weeks later on June 29, 2022. (Appendix, RE 10-1, Page ID# 209).

The Court did not explain how or why it expected to receive testimonial evidence on the disqualification motion, nor did it explain <u>how Appellants could obtain evidence regarding the Court's own only recently revealed *ex parte* communications— definitionally known exclusively to the Court and not Appellants</u>.

Judge Walker did not—and to this day, has not—disclosed any additional information about the *ex parte* communications that formed the basis of his March 17, 2022 ruling.

## C. The Bankruptcy Court Prevents Appellants from Obtaining Discovery in Advance of the Evidentiary Hearing and Again Declines to Recuse or Disclose the Substance of its Ex Parte Communications

Facing an evidentiary burden and lacking information about the newly disclosed *ex parte* communications, Appellant Manookian PLLC reluctantly availed itself of the one tool a litigant can use to obtain evidence for presentation to a Court: a deposition. It noticed a limited deposition of

Judge Charles M. Walker to take place two weeks before the evidentiary hearing set and insisted upon by Judge Walker. (Appendix, RE 10-1, Page ID# 94).

Notwithstanding the atypical conduct of the Bankruptcy Judge in setting an evidentiary hearing of its own recusal without providing any disclosure of the same, a party noticing a deposition of a judge is admittedly and undoubtedly atypical. Sensitive to that fact, Appellants went out of their way to ensure their request was minimally invasive and limited solely to their pending motion. To that end, Appellants specifically confined the scope of the deposition to two topics of inquiry: (1) Judge Walker and his staff's communications about this matter with third parties outside of court proceedings and (2) Judge Walker and his staff's investigation into this matter, the parties, or witnesses outside of the Court record.

Within twenty-four hours of filing their Notice of Depositions, Judge Walker issued an order *sua sponte* quashing the Notice and declaring it unenforceable. (Appendix, RE 10-1, Page ID# 94). Consistent with his earlier actions, rather than take the opportunity to disclose the substance or details of his *ex parte* communications, Judge Walker used the order to variously attack Appellants; accuse them of "tainting the proceedings"; and assign improper motives to their attempt simply to discover information that

Judge Walker himself was required to disclose as a result of extrajudicial communications that did not involve Appellants. *Id.*

Evidence of the same is saturated through the Order. Declining his fourth opportunity to simply provide a reasonable or innocent explanation for the *ex parte* communications, the Court wrote:

- "As to the first consideration, the Court finds that the Notice serves no purpose other than to waste the resources of the United States for private purposes... and is a misuse of the resources available in order to avail oneself of the justice provided by the bankruptcy system." (Appendix, RE 10-1, Page ID# 99).

- "The request is inappropriate as the request for testimony from the sitting judge serves no purpose other than to taint the proceedings before the Court." (Appendix, RE 10-1, Page ID# 99).

- The request for testimony of the judge sitting on the case is sought in order to contaminate the exercise of judicial and quasi-judicial responsibilities by federal judicial personnel." (Appendix, RE 10-1, Page ID# 100).

- For the twelfth and thirteenth factors, deposing the judge on a case is a manipulation of the judicial system in an effort to taint the proceedings." (Appendix, RE 10-1, Page ID# 100).

Having refused to promptly or voluntarily disclose the substance of his *ex parte* communications, Judge Walker prohibited Appellants from discovering the same via his testimony after unilaterally setting the matter for an evidentiary hearing.

Another point is necessarily made.  Judge Walker referenced having "multiple" communications with more than one attorney.  Appellants were able to question only one party during discover – Counsel for the Trustee – about whether he had engaged in such communications.  He admitted having done so but denied any specific recollections a year later.  The problematic nature of his purported lack of recollection is compounded by the Judge's refusal to disclose details about the *ex parte* communications; importantly the Court referred to *multiple such ex parte* conversations, but only one such conversation has ever been identified.

At the eventual evidentiary hearing the Court declined to permit argument or evidence, and refused to provide an accounting of the *ex parte* communications.

Instead, the Court read a statement into the record that that it would decline to rule on the motion as a result of Appellants' appeal of his order quashing the notice of his deposition. (Appendix, RE 10-1,  Page ID# 217).

## D.   Appellants Appeal Judge Walker's Order Quashing the Subpoena to Himself regarding his Ex Parte Communications

After Judge Walker quashed the subpoena to himself seeking details of his *ex parte* communications, these Appellants appealed, seeking an interlocutory ruling requiring the Bankruptcy Court to detail the substance

of its *ex parte* communications, or in the alternative, to disqualify Judge Walker. *Manookian PLLC v. Burton*, Case No. 3:22-cv-00474.

Following briefing on the matter, the District Court held that interlocutory appeal was not warranted, and that Appellants' request to disqualify Judge Walker was not yet ripe, given that Judge Walker, himself, had not yet ruled upon the motion. *Manookian PLLC v. Burton*, Case No. 3:22-cv-00474, (Appendix, RE 10-1, Page ID# 227).

**E.**   **Judge Walker Denies the Motion to Disqualify, Mistakenly Relying on a Long-Vacated State Trial Court Order**

With the appellate stay lifted, on April 4, 2023, the Bankruptcy Court took up the hearing on Appellants' Motion to Disqualify Judge Walker. Judge Walker denied the motion at the hearing, and entered his written order detailing his reasoning and analysis the following day. (Appendix, RE 10-1, Page ID# 239).

Notably, Judge Walker – once again – refused to actually provide any detail of the content of the Court's *ex parte* communications or even the participants to the conversations. Instead, he repeatedly suggested (without actually stating) that any such *ex parte* conversations he had referenced were possibly administrative or logistical in nature; accused Appellants and their attorneys of attempting to weaponize the issue; and yet again markedly declined simply to detail who he or his staff spoke to, the dates of the

conversations, what was said, or why he did not promptly alert the other parties to the communications, as is required by the judicial code of conduct. *Id*.

Relying on that long-vacated order – whose reversal had been filed with the Bankruptcy Court more than a year prior – Judge Walker stated:

> The record contains the rulings from other tribunals that have found Mr. Manookian to have acted in bad faith, engage in a pattern of obfuscation, and conduct himself in a reckless manner. Specifically, a Williamson County judge found that Mr. Manookian had knowingly, willfully, and intentionally violated a protective order and then attempted to mislead that court about that violation. That judge found Mr. Manookian's behavior regarding discovery matters to be so egregious that he imposed significant monetary sanctions against him. All of this is part of the record in this case. (Transcript Of Motion to Recuse Judge Charles M. Walker (Docket No. 161) 21:2-11)), April 4, 2023. *Also,* Finding in Order Denying Recusal (Docket No. 229 at 16).

## F.    The District Court Affirms the Bankruptcy Judge's Denial of Appellants' Recusal Motion

The Appellants appealed the Bankruptcy Judge's denial to the District Court.  On January 11, 2024, the District Court entered its Memorandum Order and Opinion (RE 15) granting Appellants leave to seek interlocutory

appeal and affirming the Bankruptcy's Court's underlying order.  This timely appeal followed.

## V.    <u>SUMMARY OF THE ARGUMENT</u>

There is no dispute that the Bankruptcy Judge engaged in multiple *ex parte* communications with the attorney in the Trustee in this matter, and at least one other unknown attorney, on the topic of Brian Manookian, one of the parties to this matter.  There is no dispute that at least one of the purposes of those communications by opposing counsel were to relate "security concerns" about Mr. Manookian.  There is no dispute that no one – the Judge or counsel – disclosed, until over a year later, the existence of those communications until the Judge used them as a basis for making a ruling opposed to Mr. Manookian.

Canon 3 of the Code of Conduct for Federal Judges requires recusal under these unusual circumstances.

## VI.    <u>ARGUMENT</u>

## A.    **The Bankruptcy Judge's Refusal to Disclose Ex Parte Conversations Alone Warrants Disqualification**

The Bankruptcy Court should be disqualified from this matter because it engaged in multiple prohibited *ex parte* communications about a critical party and witness to this case, Brian Manookian, and this proceeding

generally[1] with "at least two [unidentified] lawyers" while this action has been pending. (Appendix, RE 10-1, Page ID# 186-187).

Following those communications, the Court failed to promptly notify the parties of its repeated *ex parte* conversations as required by the Code of Conduct for United States Judges.[2]  Instead, the Court only disclosed their occurrences years later, and only then to justify the Court's order that depositions in this matter be conducted at a secure courthouse location.  In doing so, the Court attributed its order to unarticulated "concerns" about Brian Manookian which were communicated directly to the Court by undisclosed attorneys in various *ex parte* communications, but that neither the Court nor those attorneys disclosed to Appellants at the time.

As a result, Appellants were never able to respond to the *ex parte* representations, or even make a record regarding those improper communications for review by a superior court.  To this day, potentially years after the *ex parte* communications in this still-pending case, Appellants thus remain in the dark as to the substance of those prohibited communications, although their clear corrosive effect on the Court has recently become clear.

---

[1] Brian Manookian is the sole member of the Debtor, Cummings Manookian, and the Sole Member of the Defendant, Manookian PLLC.

[2] Code of Conduct for United States Judges, Canon 3(A)(4).

28 U.S.C. § 455(a) states that "[a]ny . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This recusal standard is objective; the relevant inquiry is whether a "reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 800 (5th Cir. 1986) (internal quotation marks omitted), aff'd, 486 U.S. 847 (1988); *accord In re Haas*, 292 B.R. 167, 177 (Bankr. S.D. Ohio 2003).

Canon Three of the Code of Conduct for Federal Judges provides that the Court shall not have *ex parte* communications, except in limited circumstances, and even then must give all parties prompt notice of the communications and an opportunity to respond.

> Except as set out below, <u>a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers.</u> If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, <u>the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested.</u> A judge may:
>
> > (a) initiate, permit, or consider ex parte communications as authorized by law;
> >
> > (b) when circumstances require it, permit ex parte communication for scheduling, administrative, or emergency purposes, but only if the ex parte

communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication;

(c) obtain the written advice of a disinterested expert on the law, but only after giving advance notice to the parties of the person to be consulted and the subject matter of the advice and affording the parties reasonable opportunity to object and respond to the notice and to the advice received; or

(d) with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters.

(Emphasis added.)

Finally, Federal law mandates that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."   28 U.S.C. § 455(a). Engaging in improper *ex parte* communications in violation of the Federal Code of Conduct for Judges is, definitionally, conduct resulting in a judge's impartiality being reasonably questioned, warranting recusal.

Disqualification of a judge under these circumstances is governed by statute. *See* 28 U.S.C. § 455(a) & (b)(1) (requiring disqualification when the judge's "impartiality might reasonably be questioned" and when the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding").  "The standard for

determining whether a judge should be disqualified is an objective one: whether a reasonable person with knowledge of all facts would conclude that the judge's impartiality might reasonably be questioned." *In re Haas*, 292 B.R. 167, 177 (Bankr. S.D. Ohio 2003). Judicial remarks about a litigant "may [support a bias or partiality challenge] if they reveal an opinion that derives from an extrajudicial source[.]" *Liteky v. United States*, 510 U.S. 540, 555 (1994) (holding that Extrajudicial Source Doctrine applies to disqualification under § 455) (emphasis in original).

The Bankruptcy Court refused to apply the objective standard or otherwise disclose its *ex parte* communications about Appellant Manookian. Instead, it scheduled an evidentiary hearing, requiring *Appellants* to put on evidence regarding the Court's *ex parte* communications—evidence that is exclusively in the Court's possession. Then it prevented Appellants from obtaining that evidence when Appellants—reluctantly, and only to meet the additional evidentiary burden put on them by the Bankruptcy Court—issued a deposition Notice to the Court in order to obtain evidence before the hearing. The Court *sua sponte* quashed the Notice, preventing Appellants from obtaining evidence they should not have been required to put on in the first place.

Judge Walker's refusal to simply be transparent about his *ex parte* communications warrants disqualification.  He casually, and possibly unintentionally, referenced those communications to support his ruling on a discovery lacking any support from evidence in the record.  When confronted about those communications, Judge Walker attacked the Appellants for simply seeking to learn whether his communications warranted recusal – an inquiry they were not required to make given the requirement that the Court affirmatively and promptly disclose such communications to litigants.

Judge Walker's actions in engaging in *ex parte* communications, refusing to detail those *ex parte* communications, and acting on those *ex parte* communications would lead any reasonable observer to question his impartiality.  This alone requires recusal.

But Judge Walker's actions after properly being requested to detail his *ex parte* communications underscore the need for recusal.  Immediately thereafter, he began issuing written orders announcing that the proceeding was "tainted" by any challenge to his impartiality (more appropriately described as an admission that Judge Walker was tainted against anyone issuing such a challenge) and alternatively attacking the parties and their lawyers who sought to discover any details of his *ex parte* communications.

**B.**     **The Bankruptcy Judge's Actions in Response to Efforts to Discover the Content, Identities, and Extent of Ex Parte Communications Warrant Disqualification.**

The Bankruptcy Court's response to Appellants' request that he simply make the disclosures already required by the Judicial Code of Conduct confirms the need for his disqualification.  Rather than simply make the disclosure, Judge Walker issued a vitriolic order baselessly accusing Appellants of improprieties.  These are those statements, as to Appellants' Request that the Judge simply comply with the existing Federal Judicial Canon:

- "The request is inappropriate as the request for testimony from the sitting judge serves no purpose **other than to taint the proceedings before the Court.**" (Appendix, RE 10-1,  Page ID# 99). Emphasis Added.

- The request for testimony of the judge sitting on the case is sought **in order to contaminate** the exercise of judicial and quasi-judicial responsibilities by federal judicial personnel." (Appendix, RE 10-1, Page ID# 100). Emphasis Added.

- For the twelfth and thirteenth factors, deposing the judge on a case is a manipulation of the judicial system **in an effort to taint the proceedings**." (Appendix, RE 10-1,  Page ID# 100). Emphasis Added.

Strikingly, this is not a litigant, but rather a Judge, announcing, in his own view that this proceeding is "tainted" and "contaminated" because he has been asked by Appellants to simply do his duty in disclosing *ex parte*

communications.  Setting aside every prior argument in this brief, Judge Walker, himself, confirmed that he no longer meets the objective criteria to preside over this case.  He alone has deemed the mere attempt to require acquiescence to basic Canons of Judicial Conduct as not only a personal attack, but an effort to "taint" and "contaminate" the proceedings.  Judge Walker's acknowledgment that the proceedings are personally tainted and contaminated in his view, require reassignment to another bankruptcy judge.

Finally, and to be clear, Appellants did not create this situation.  Judge Walker did.  When the Appellants learned of his inappropriate communications, they moved in writing for disclosures that Judge Walker should have already made.  Appellants did not set the matter for evidentiary hearing; Judge Walker did.  And Appellants would not have been required to seek his testimony had Judge Walker simply divulged the details of his *ex parte* communications.  Even in seeking his testimony, Appellants made clear in the Notice of Deposition the exceedingly narrow scope of evidence they sought to obtain.

This situation is not the work of the Appellants, regardless of Judge Walker's accusations to the contrary.  But the clearly corrosive effect of the *ex parte* communications and extrajudicial investigation—which was by the

Bankruptcy Court's own admission the basis for at least one ruling requiring that special conditions be placed upon Mr. Manookian—coupled with the Court's refusal to disclose details of the extrajudicial information, and its caustic subsequent order, makes clear that Judge Walker, under any objective standard, cannot fairly continue to preside over this matter.

This Court should order Judge Walker disqualified, and it should further order that he now make the disclosures mandated by the Code of Judicial Conduct—albeit belatedly.  Appellants are entitled to learn the substance of the *ex parte* communications, including to determine which other orders or rulings of the Bankruptcy Court in this proceeding may have been influenced by extrajudicial communications or information.  Such steps are necessary to maintain the integrity of these proceedings.

**C.**   **The Bankruptcy Court's Reliance on a Vacated Order Constitutes Legal Error and Further Warrants Recusal.**

Justifying its prior Order, the Bankruptcy Court found that Mr. Manookian "acted in bad faith, engaged in a pattern of obfuscation, and conducted himself in a reckless manner." (Appendix, RE 10-1,  Page ID# 252).  The *sole* basis for this finding is a sanctions order by a state trial court judge that was subsequently *vacated* on appeal and remanded to a different judge as a result of the first judge's lack of impartiality.  Judge Walker's reliance on this vacated order—the overturning of which was a key issue in

Judge Crenshaw's decision overturning a prior order of Judge Walker in this case—to justify his impressions of a litigant provides a further basis for reasonably questioning his impartiality.

**D.** **Recusal Is Even More Warranted in a Bench Trial, Where the Court Serves as Finder of Fact.**

The Federal Judicial Center has observed that in a bench trial, "the judge's role is even more pivotal than in a jury trial." *Recusal: Analysis of Case Law Under 28 U.S.C. §§ 455 & 144* (Fed. Jud. Ctr. 2002) at 59. "When the judge is the actual trier of fact, the need to preserve the appearance of impartiality is especially pronounced." *Id.* (quoting *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 166 (3d Cir. 1993)). Here, Judge Walker serves as the decider of law and fact; disqualification is doubly warranted where he has engaged in *ex parte* communications and formed a definite opinion of a litigant unsupported by evidence in the record.

## VII.  CONCLUSION

For the foregoing reasons, Appellants respectfully request that the Court reverse the Order Denying the Motion to Recuse (Appendix, RE 10-1, Page ID# 239) and enter an Order disqualifying the Bankruptcy Court and further requiring it to disclose all *ex parte* communications about the case

such that Appellants can evaluate prior orders of the Court in light of those conversations.

Date: June 6, 2024

Respectfully submitted,

/s/ John Spragens
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I hereby certify that this brief complies with the type-volume limitation in Rule 32 because, as counted by the Microsoft Word count tool, this brief contains 4,454 words, excluding the parts exempted by Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirements in Rule 32(a)(5)(A) and the type-style requirements in Rule 32(a)(6) because this brief has been prepared in proportionally spaced 14-point Georgia font.

Dated: June 6, 2024.

/s/ John Spragens

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Appellants' Opening Brief was filed June 6, 2024 and served electronically upon the following parties in interest as indicated on the receipt issued by the Court's electronic filing system:

Jay R. Lefkovitz                        931-526-6244 (F)
Lefkovitz & Lefkovitz, PLLC             JLefkovitz@lefkovitz.com
312 East Broad Street, Suite A
Cookeville, TN 38501                    Counsel for Debtor Cummings
(931) 528-5297 (T)                      Manookian

Phillip Young
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
(615) 465-6008 (T)
phillip@thompsonburton.com

Counsel for Trustee Jeanne Anne
Burton

John P. Konvalinka
Grant, Konvalinka & Harrison,
P.C.
633 Chestnut Street Suite 900
Republic Centre
Chattanooga, TN  37450-0900
(423) 756-8400 (T)

(423) 756-6518 (F)
jkonvalinka@gkhpc.com

Counsel for Creditor Grant,
Konvalinka & Harrison, P.C.

Daniel Puryear
Puryear Law Group
104 Woodmont Boulevard, Suite
201
Nashville, TN 37205
(615) 255-4859 (T)
(615) 630-6602 (F)
dpuryear@puryearlawgroup.com

Counsel for Creditor D.F. Chase,
Inc.


 /s/ John Spragens

## **ADDENDUM**

Pursuant to 6 Cir. R. 28(b)(1)(A)(i), Appellant hereby designates the following relevant documents from the originating court:

- All documents listed in the Designation of Record on Appeal, RE 18 (No. 3:23-cv-00392 M.D. Tenn.) (Feb. 24, 2024), PageID# 1864-1866, specifically including:

- RE 10-1 (No. 3:23-cv-00392 M.D. Tenn.) (May 26, 2023), PageID# 93-310;

- RE 15 (No. 3:23-cv-00392 M.D. Tenn.) (Jan. 11, 2024), PageID# 1839-1858; and

- RE 16 (No. 3:23-cv-00392 M.D. Tenn.) (Feb. 9, 2024), PageID# 1859-1860.