Case No. 24-5139

_____

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

BRIAN MANOOKIAN, MANOOKIAN PLLC, AFSOON HAGH and.
HAGH LAW PLLC,
Appellants

v.

JEANNE ANN BURTON, CH. 7 TRUSTEE,
Appellee

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE (NASHVILLE)
Case No. 3:23-cv-00392

_____

BRIEF OF THE APPELLEE,
JEANNE ANN BURTON, CH. 7 TRUSTEE.

_____

Phillip G. Young, Jr.
THOMPSON BURTON PLLC
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
Tel: 615-465-6000
phillip@thompsonburton.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure and Sixth Circuit Rule 26.1, counsel for Appellant, Jeanne Ann Burton, certifies that no party to this appeal is a subsidiary or affiliate of a publicly owned corporation and no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome. Appellee is an individual serving as the bankruptcy trustee for a defunct limited liability company

# I.    TABLE OF CONTENTS

PAGE

I.    Table of Contents……………………………………………..........1

II.   Table of Authorities……………...…………………………….......3

III.  Statement Regarding Oral Argument …………..……………..…....6

IV.   Statement of Jurisdiction…..………………………………….....7

V.    Statement of Issues……………………………………………….8

VI.   Statement of the Case……………………………………………..10

VII.  Summary of Argument…………………………………..…….…11

VIII. Argument………………….……………….……..…………...13

   A.    The Appellants Failed to Establish Any Basis For Recusal……...……………………………….….......13

        a.  The Appellants Offered No Evidence to Support the Recusal Motion……...……………………………….......15

        b.  There Are No Indicia of Bias……...….…………….......16

   B.    There Were No Impermissible Ex Parte Communications with the Bankruptcy Court ………………………………….…...22

   C.    The Bankruptcy Court Explained That It Conducted No Extrajudicial Research ………………………………….…..27

   D.    One of the Appellants, Brian Manookian, Lacks Standing…..28

   E.    The Appellants Failed to Identify Any Error in the District Court's Finding…………………………..…………….…..29

IX.   Conclusion…….…………………………………………….30

X.    Certificate of Compliance with Fed. R. App. P. 32(a)(7)………..…..31

XI.   Certificate of Service………………………………….………….32

XI.   Addendum…………………………………………..….………..33

## II.    TABLE OF AUTHORITIES

### Federal Cases

PAGE

*Blixseth v. Yellowstone Mt. Club, LLC*
    742 F.3d 1215 (9th Cir. 2013)………..……………………22, 23, 24

*Fidelity Bank, Nat'l Ass'n v. M.M. Group, Inc.*
    77 F.3d 880 (6th Cir. 1996)……. ………………………..……...…..28, 29

*Hook v. McDade*
    89 F.3d 350 (7th Cir. 1996)…………………………………………...14

*In re Allen*
    2009 LEXIS 4431 (Bankr. Idaho 2009)……. ………..……...……22, 25

*In re Beard*
    811 F.2d 818 (4th Cir. 1987)……. ………………..……….…...……..24

*In re Casco Bay Lines, Inc.*
    17 B.R. 946 (1st Cir. BAP 1982)……. ………………..……….…..…..24

*In re Gibson*
    2010 WL 744572 (Bankr. C.D. Ill. 2010)……………………….....13

*In re Nat'l Union Fire Ins. Co.*
    839 F.2d 1226 (7th Cir. 1988)……………………………….……..14

*In re Pansier*
    2019 Bankr. LEXIS 2431 (Bankr. E.D. Wisc. 2019)…………..……..14

*In re Parson*
    2018 Bankr. LEXIS 830 (Bankr. N.D. Tex. 2018)……. ………….....25

*In re Sherwin-Williams Co.*
    607 F.3d 474 (7th Cir. 2010)……..……………………….……..14

*In re Stroller*
    374 B.R. 618 (Bankr. N.D. Ill. 2007)……………………....…13, 14

*Laird v. Tatum*
        409 U.S. 824 (1972)……………………..…………………….…..….…14

*Leaf v. Nike, Inc.*
        2021 U.S. App. LEXIS 32180 (6th Cir. 2021)……. …….…..…….…...…21

*Liteky v. United States*
        510 U.S. 540 (1994)……. ………….….……………..…..….…..21

*Metcalf v. Golden (In re Adbox, Inc.)*
        234 Fed. Appx. 420 (9th Cir. 2007)……. ………………..….….…..24

*Reed v. Rhodes*
        179 F.3d 453 (6th Cir. 1999)..…… ………………………...….….…..22

*Seidel v. Durkin (In re Goodwin)*
        194 B.R. 214 (9th Cir. BAP 1996)……………………….…...…13, 25

*Simon v. Amir (In re Amir)*
        436 B.R. 1 (6th Cir. B.A.P. 2010)……………….….….….…...…28

*Travelers Cas. & Sur. v. Corbin (In re First Cincinnati, Inc.)*
        286 B.R. 49 (6th Cir. B.A.P. 2002)……………………..…….…...…..29

*United States v. Holland*
        519 F.3d 909 (9th Cir. 2008)……. ………………….….……..15

*United States v. Parker*
        837 F. Appx. 341 (6th Cir. 2020)……………………………...…..21

*United States v. Van Griffin*
        874 F.2d 634 (9th Cir. 1989)..…… …………………...….….…..22

*United States v. Wecht*
        484 F.3d 194 (3d. Cir. 2007)……..……………………...….….…..23

*Willenbring v. United States*
        306 F.2d 944 (9th Cir. 1962)……. …………………………….…..22

4

## Federal Statutes

PAGE

28 U.S.C. §455……………………………..…………………………...........…..10

28 U.S.C. §453………..………………………..……………….............…..11

## Local Rules of Court

PAGE

United States Bankruptcy Court for the M.D. of Tenn. Local Rule 9014-1…12

### III.   STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Rule 34 of the Federal Rules of Appellate Procedure and 6th Cir. R. 34, Appellee, Jeanne Ann Burton the Chapter 7 trustee (the "Trustee") waives oral argument in this matter except to the extent that oral argument is granted to the Appellants. This matter involves application of well-established, existing Sixth Circuit precedent and, as such, the Trustee believes oral argument is unnecessary.

## IV.    STATEMENT OF JURISDICTION

The United States Bankruptcy Court for the Middle District of Tennessee had jurisdiction over this matter pursuant to 28 U.S.C. §157(b)(1). The United States District Court for the Middle District of Tennessee had jurisdiction to hear appeals of final orders and judgments of the bankruptcy court pursuant to 11 U.S.C. § 158(a)(1). This is an appeal from an order of the United States District Court for the Middle District of Tennessee that was entered on January 11, 2024, which affirmed the Bankruptcy Court's order.

The Sixth Circuit Court of Appeals has jurisdiction over this matter pursuant to 28 U.S.C. §158(d).  This appeal was timely filed on February 9, 2024.

## V.    STATEMENT OF ISSUES

Whether a federal bankruptcy judge must recuse himself simply because he has made adverse procedural rulings against a party.

## VI.    STATEMENT OF THE CASE

This case is about whether a federal bankruptcy judge must recuse himself simply because he has made adverse procedural rulings against a party.  While the Appellants (one of whom has no standing to pursue this appeal) couch this as a case about *ex parte* communications and extrajudicial research, it is really about creating further judicial delay by attempting to remove a judge simply because he does not always rule in favor of the Appellants.

The event that allegedly precipitated the filing of Brian Manookian and Manookian PLLC's Motion to Disqualify Judge Charles Walker, Appendix, RE 10-1, Page ID # 198 (the "Recusal Motion") was a hearing in which the Bankruptcy Court ordered that all depositions (including those of the Appellee and her special counsel) occur at the United States Bankruptcy Court for the Middle District of Tennessee.  This ruling regarding an administrative function angered the Appellants and, they allege, is evidence of Judge Charles Walker's bias against them. The Appellants proceeded to file the Recusal Motion and attempted to depose the sitting bankruptcy judge by subpoena (which was quashed by the Bankruptcy Court and affirmed by the District Court). In their Recusal Motion, the Appellants allege that there were two sources of Judge Walker's alleged bias:  a communication between Appellee's

special counsel and the courtroom deputy, and the Bankruptcy Court's alleged "extrajudicial research."

Despite these serious allegations, the Appellants have offered no evidence (1) that Judge Charles Walker has shown any bias (objectively or subjectively); (2) that alleged *ex parte* communications were impermissible; or (3) that the Bankruptcy Court has conducted any extrajudicial research.

By contrast, in his Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker, Appendix, RE 10-1 Page ID # 239, the Bankruptcy Court explained in great detail the rationale behind his discovery order, why any communications with the courtroom deputy were not impermissible, and the source (from the record of the bankruptcy case) of the alleged "extrajudicial" information. Further, the District Court affirmed the Bankruptcy Court's findings, specifically noting that none of what Appellants have attempted to present as fact, even considered collectively, objectively suggests bias of the type that would require Judge Walker's recusal. Memorandum and Order, RE 15, Page ID # 1851.

This appeal appears to be nothing more than the latest in a long string of delay tactics by the Appellants; as such, it should be denied, and the District Court's Order should be affirmed.

## VII.   SUMMARY OF ARGUMENT

This appeal lacks any basis in fact or in law. First, despite an opportunity to present evidence at an evidentiary hearing, the Appellants were unable to present any evidence of Judge Charles Walker's alleged bias.  In support of their disqualification motion, the Appellants relied exclusively upon the Court's statements at various hearings (which, on their face, demonstrate the judge's lack of bias) and upon a deposition of Appellee's special counsel (who described an allegedly *ex parte* communication as a brief telephone call with the courtroom deputy regarding an administrative matter). These are the undisputed facts of this case, and they belie the allegations of the Appellants.

The alleged "*ex parte* communications" were in fact entirely permissible.  The one telephone call that was identified by Appellants was between Appellee's special counsel and a courtroom deputy, who is not a member of Judge Walker's chamber staff. Moreover, the telephone call concerned an administrative issue or, at most, a security issue.  Case law is clear that communications between counsel and courthouse staff, especially those concerning administrative matters or security concerns, are not impermissible and would form no basis for recusal.

Nor did Judge Walker engage in any extrajudicial research. He explained, in some detail, that the source of his statements regarding Brian Manookian's behavior before other tribunals was exclusively from the record of this case. A judge's thorough review of a case's record should be a mark of excellence, not a basis for recusal.

Finally, the Appellee must once again point out to this Court that Brian Manookian has no standing for an appeal. He is simply not a party to the adversary proceeding from which this appeal emanates. The Court should find that he lacks standing in this appeal from an order in the adversary proceeding in order to streamline future matters.

# VIII.  ARGUMENT

A.    THE APPELLANTS FAILED TO ESTABLISH ANY BASIS FOR RECUSAL

Judge Walker properly denied the Appellants' Recusal Motion because they failed to establish any basis for such recusal.  The statutory basis of the Recusal Motion is 28 U.S.C. § 455.  That section states in relevant part:

> (a)   Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b)   He shall also disqualify himself in the following circumstances:
> (1)  Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

In evaluating a motion brought under § 455, a judge is not required "to accept all allegations by the moving party as true" because "[i]f a party could force recusal of a judge by factual allegations, the result would be virtual open season for recusal."  *In re Gibson*, 2010 WL 744572, at *2 (Bankr. C.D. Ill. 2010); *see also Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214, 222-23 (9th Cir. BAP 1996) (finding that the court is not required to take all factual allegations as true in a recusal motion).  Rather, disqualification "should be viewed as an extraordinary occurrence," and "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty not to sit where disqualified."  *In re Stroller,* 374 B.R. 618, 621 (Bankr. N.D. Ill. 2007)

(quoting *Laird v. Tatum*, 209 U.S. 824, 837 (1972)). "Judges have an obligation to litigants and their colleagues not to remove themselves needlessly, because a change of umpire in mid-contest may require a great deal of work to be redone . . . and facilitate judge-shopping." *In re Nat'l Union Fire Ins. Co.,* 839 F.2d 1226, 1229 (7th Cir. 1988) (citations omitted).

The party moving for recusal has a burden of proving doubts about the judge's impartiality. *In re Pansier*, 2019 Bankr. LEXIS 2431, at *2-3 (Bankr. E.D. Wisc. 2019); *Stroller*, 374 B.R. at 622. The Appellants have failed to meet that burden. A judge is required to recuse himself only where (a) a *reasonable* person might question his impartiality, or (b) where the judge is subjectively biased toward a party.[1] The first is an objective test that asks the court to consider how things might appear from a reasonable and rational party's perspective, not a "hypersensitive, unduly suspicious person." *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996). "That an unreasonable person focusing on only one aspect of the story might perceive a risk of bias is irrelevant." *In re Sherwin-Williams Co.*, 607 F.3d 474, 477 (7th Cir. 2010). The second test is a subjective test; "[t]his test is highly personal in nature and

---

[1] Only the Bankruptcy Court can answer whether it is subjectively biased toward a party. Judge Charles Walker answered that question in the negative in the Bankruptcy Court's Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker Appendix, RE 10-1 Page ID # 239.

requires each judge in such situation to set aside emotion and thoughtfully examine his ability to impartially 'administer justice without respect to persons.'"   *United States v. Holland*, 519 F.3d 909, 915 (9th Cir. 2008) (quoting 28 U.S.C. § 453).

The ultimate question presented by the Recusal Motion was whether an objective, reasonable person might question the impartiality of the Judge Charles Walker.  The Bankruptcy Court and Middle District properly found no basis for recusal because (a) the Appellants presented no evidence whatsoever to support recusal and (b) because the record is devoid of any bias, objectively or subjectively, by the Bankruptcy Court.

### a. THE APPELLANTS OFFERED NO EVIDENCE TO SUPPORT THE RECUSAL MOTION

The Appellants did not support the allegations against Judge Charles Walker contained in their Recusal Motion because they offered <u>no evidence</u> at the evidentiary hearing conducted by the Bankruptcy Court on April 4, 2023.  As the Bankruptcy Court noted in its Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker, Appendix, RE 10-1 Page ID # 239, the Appellants failed to comply with the United States Bankruptcy Court for the Middle District of Tennessee Local Rule 9014-1, which governs disclosure and presentation of evidence in an evidentiary proceeding.  Enforcing Local Rule 9014-1, the Bankruptcy Court ruled that the Appellants could not present

any evidence at the hearing on the Recusal Motion because they had failed to timely file a witness and exhibit list (despite having extra time to do so due to a continuance of the hearing). The Appellants did not include any issues concerning the Bankruptcy Court's enforcement of Local Rule 9014-1 in their statement of issues on appeal before the District Court or this Court; therefore, the Bankruptcy Court's enforcement of the local rule is not a question for this Court.

Having failed to comply with Local Rule 9014-1, and the Bankruptcy Court having found that the Appellants could present no evidence due to their failures in that regard, the Appellants were unable to support their allegations against Judge Walker with any evidence. They offered no admissible witnesses or exhibits. The Appellants having failed to present any evidence to support their allegations, the Bankruptcy Court properly denied their Recusal Motion. Likewise, this Court must find that there is no evidentiary basis to overturn the Bankruptcy Court's findings.[2]

### b. THERE ARE NO INDICIA OF BIAS

---

[2] In their Opening Appeal Brief, the Appellants argue that they have been prevented from gathering evidence because Judge Walker quashed their attempt to subpoena him for testimony. This is a red herring for two reasons. First, the District Court affirmed the Bankruptcy Court's order quashing that subpoena, on both procedural and substantive grounds. *See* M.D. Tenn. Case No. 22-cv-00474, Doc. 8. Second, the Appellants failed to present what evidence was in their possession (which was obviously sufficient for them to sign and file the Recusal Motion) due to their non-compliance with local rules.

Even if the Appellants had offered some evidence at the hearing on the Recusal Motion, there is no indication (in the record or otherwise) that Judge Charles Walker is objectively or subjectively biased against any of the Appellants. The Appellants' argument for recusal seems to rest upon the Bankruptcy Court's ruling, on a rather routine discovery dispute, that all depositions in the case must be conducted at the courthouse. This is not an indication of bias for a number of reasons. First, the discovery decision was not material or substantive in any regard and did not alter the Appellants' rights. The Bankruptcy Court summarized the immateriality of this discovery decision in its order:

> Moreover, despite alleging a "corrosive effect on the Court," movants point to no other prejudice to Mr. Manookian than the location of the depositions. There was no accusation linked to any ruling on a material issue, no objection overruled that hindered or impaired the movant's rights in this matter, and in fact, no instance of prejudice against the movants was articulated at all. The prejudice alleged from these three occurrences was that the depositions in this case were conducted in the courthouse. The location of depositions is an administrative issue, not a material issue. It does not impact the issues before the Court. Although Movants insist that requiring the depositions to be held in the courthouse reflects the presence of the Court's prejudice against Mr. Manookian, what it more reasonably reflects is the judge's familiarity with the case. The hearing on March 17, 2022 involved cross-motions to compel and reflected the biggest issue so far in this adversary: discovery. In fact, the case is comprised mostly of three years of discovery disputes, with rulings reflecting the Court's stamina for fairness and

justiciable administration of the case. Moreover, none of these
issues are material to the case.

Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker,
Appendix, RE 10-1 Page ID # 253. An immaterial, procedural decision in not
evidence of judicial bias.

Second, Judge Walker's order that all depositions occur at the
courthouse affected the Appellee and her counsel at least as much as it
affected the Appellants.  Three depositions were ultimately conducted at the
courthouse, those of Brian Manookian, Jeanne Ann Burton, and Phillip
Young.  The deposition of Afsoon Hagh was ultimately conducted by Zoom
video conference.  It is not as if the Appellee's witnesses were deposed in her
counsel's office, while the Appellants' witnesses were deposed at the
courthouse; rather, all witnesses (except Ms. Hagh) were deposed at the
courthouse.  The order affected all parties equally.

Third, as evidenced by statements of the Bankruptcy Court in its order,
the decision to hold depositions at the courthouse was influenced by a number
of factors beyond security.  As special counsel for the Trustee explained at the
hearing, the Trustee preferred to take all in-person depositions at the
courthouse not just because of security but also because conducting
depositions at the courthouse is not outside the normal course for a trustee,
the courthouse provided a centralized location, and conducting the depositions

at the courthouse provided the litigants easy access to the Court in case of discovery disputes. *See* Hearing Transcript (Attached on as <u>Exhibit 1</u> to the Recusal Motion, Appendix, RE 10-1, Page ID # 174-175). In fact, the Trustee's primary reason for seeking to conduct depositions at the courthouse was the availability of the Bankruptcy Court to rule on discovery disputes, since there had already been multiple cross motions to compel discovery. Discovery was (and is) a significant, ongoing problem in this adversary proceeding; in fact, the hearing conducted in this matter that is the source of the Recusal Motion was to resolve outstanding discovery disputes.

Finally, the Bankruptcy Court's own comments undermine the Appellants' claim that Judge Charles Walker is biased against them. Judge Walker's statements from the bench demonstrate that he was not prejudging any litigant or their character in any way:

> To be candid, Mr. Spragens, I mean, your client's past behavior before the tribunals, and I've had at least two lawyers call the Court and say they don't feel comfortable if your client is going to appear, and, you know, the Court takes those concerns very seriously and <u>makes no conclusion on whether they are valid, they are perceptions which drive behaviors of other parties.</u> <u>And to eliminate any of those perceptions,</u> <u>and to protect everyone against any allegations of bad behavior, misbehavior, or perceived misbehavior,</u> it makes sense to do them here in an environment where no one can get your client further down a rabbit hole of he did this or he did that, that we're in a neutral environment, which affords certain protections. And if nothing else, in terms of everybody's on their best behavior.

Hearing Transcript ((Attached on as <u>Exhibit 1</u> to the Recusal Motion, Appendix, RE 10-1, Page ID # 186-187) (emphasis added).  Far from pre-judging Brian Manookian or his motives, the Bankruptcy Court specifically stated it was drawing no conclusions about Mr. Manookian and ordered that depositions be conducted at the courthouse to avoid any allegations of bad behavior, whether real or perceived.  The Bankruptcy Court reiterated this viewpoint in its Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker:

> In fact. *[sic]* Judge Walker expressed his objective approach to the situation by pointing out that it would protect all parties from any uncomfortable situation or any accusation, as well as aid in the expeditious and efficient administration of discovery: "And to eliminate any of those perceptions, and to protect everyone against any allegations of bad behavior, misbehavior, or perceived misbehavior, it makes sense to do them here in an environment where no one can get your client further down a rabbit hole of he did this or he did that, that we're in a neutral environment, which affords certain protections. And if nothing else, in terms of everybody's on their best behavior." Transcript at p. 85

Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker, Appendix, RE 10-1 Page ID # 239 (quoting Hearing Transcript (Attached as <u>Exhibit 1</u> to the Recusal Motion, Appendix, RE 10-1 Page ID # 239).

Simply put, an adverse ruling is not enough to form a claim of bias. Even if a judge calls out a litigant and "looks unfavorably on a party's litigation tactics does not make the court improperly biased against that

party." *Leaf v. Nike, Inc.*, 2021 U.S. App. LEXIS 32180, *19-20 (6th Cir. 2021) (citing *Liteky v. United States*, 510 U.S. 540, 550-51 (1994); *United States v. Parker*, 837 F. Appx. 341, 346 (6th Cir. 2020)). "For this type of criticism to reveal improper bias, the criticism must stem from something that can be described as wrongful (for example, a court's use of some outside-the-lawsuit source that it should not have considered)." *Leaf*, 2021 U.S. App. LEXIS 32180 at *20 (citing *Parker*, 837 F. Appx. at 346). Furthermore, "there must be a wrongfulness in that the view is either 'undeserved' or 'rests upon knowledge that the subject ought not to possess.'" *Parker*, 837 F. Appx. at 346 (quoting *Liteky*, 510 U.S. at 550). Even if the judge does look unfavorably on a litigant, if the opinion is formed on facts introduced during the proceedings it will not be a basis of bias unless the judge "displays a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. Essentially, there must be a strong showing of bias that derives from outside or incorrect sources, or the bias is extreme. An example of extreme bias is "disparaging the nationality of the defendant by declaring that all people of that nationality have 'hearts [that] are reeking with disloyalty.'" *Parker*, 837 F. Appx. at 347 (quoting *Liteky*, 510 U.S. at 555).

Judge Charles Walker's statements, on their very face, indicate that he was not prejudging any party or witness, and he certainly demonstrated no

21

objective or subjective bias toward any party to this matter. His statements were not extreme nor were they derived from any outside sources. As such, there is no basis for recusal and this appeal must be denied.

B. THERE WERE NO IMPERMISSIBLE EX PARTE COMMUNICATIONS WITH THE BANKRUPTCY COURT

In the Recusal Motion, the Appellants accuse Judge Charles Walker of having one or more *ex parte* communications with counsel involved in this matter which, the Appellants claim, biased the Bankruptcy Court. The facts simply do not support these allegations.

First, it is important to note that not all *ex parte* communications are impermissible; indeed, some may be necessary. The occurrence of an *ex parte* communication with the court or its staff does not automatically necessitate recusal. "While *ex parte* communications are discouraged, they aren't always improper and don't necessarily call for recusal." *Blixseth v. Yellowstone Mt. Club, LLC,* 742 F.3d 1215, 1219 (9th Cir. 2013) (citing *Reed v. Rhodes,* 179 F.3d 453, 468-69 (6th Cir. 1999); *United States v. Van Griffin,* 874 F.2d 634, 637 (9th Cir. 1989); *Willenbring v. United States,* 306 F.2d 944, 946 (9th Cir. 1962)). The fact that an *ex parte* communication occurred, on its own, does not require recusal. *In re Allen,* 2009 LEXIS 4431, at \*26 (Bankr. Idaho 2009); *see also Willenbring,* 306 F.2d at 946. *Ex parte* communications are only the basis for recusal when the substance of those communications might

cause a reasonable person to question the judge's impartiality. *Blixseth,* 742 F.3d at 1219; *United States v. Wecht,* 484 F.3d 194, 214-15 (3d Cir. 2007).

The Appellants base their allegations of bias created by *ex parte* communications on two things: (1) the Bankruptcy Court's disclosure to Brian Manookian's counsel that "I've had at least two lawyers call the Court and say they don't feel comfortable if your client is going to appear. . .",  Hearing Transcript (Attached as <u>Exhibit 1</u> to the Recusal Motion, Appendix, RE 10-1 Page ID # 239) and (2) testimony of the Appellee's special counsel that he telephoned the courtroom deputy (who is not a member of Judge Walker's chambers[3]) to alert the courtroom deputy to an administrative problem -- that is that the Debtor's principal, Brian Manookian, had an order of protection entered against him by counsel for the bankruptcy estate's largest creditor.[4] These are the only facts upon which the Appellants rely for their accusation that *ex parte* communications have created bias.  However, the law seems clear that the conversation detailed above, and about which special counsel testified, would not lead a reasonable person to question the Court's impartiality and did not warrant recusal.

---

[3] See Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker, Appendix, RE 10-1 Page ID # 239.
[4] Note that the Appellants never dispute that Mr. Manookian was, in fact, subject to a protective order obtained by another attorney.

First, special counsel described the purpose of the telephone call to the courtroom deputy as an administrative matter, or "a logistical issue" as he referred to it in his testimony.  *See* Transcript of Deposition of Phillip Young (Attached as <u>Exhibit 1</u> to Bankr. Doc. 174), pp. 43-46.[5]  A number of courts have held that discussions between a party's counsel and a court concerning administrative matters does not constitute an impermissible *ex parte* communication that would warrant recusal.  *See, e.g., Metcalf v. Golden (In re Adbox, Inc.),* 234 Fed. Appx. 420, 420 (9th Cir. 2007) ("Although the Metcalfs have identified several *ex parte* contacts between the bankruptcy judge, his law clerk and counsel for appellees, those communications related to purely procedural matters."); *In re Beard,* 811 F.2d 818, 829-30 (4th Cir. 1987) (meeting between a district court judge and debtor's counsel to discuss "a procedural order to govern the administration of a complex Chapter 11 proceeding" was no basis for recusal); *In re Casco Bay Lines, Inc.,* 17 B.R. 946, 956 (1st Cir. BAP 1982) (communications between bankruptcy judge and Chapter 11 Trustee concerning administrative, rather than substantive, issues did not require disqualification); *Blixseth,* 742 F.3d at 1220 ("*Ex parte*

---

[5] In their Opening Brief, the Appellants state that Appellee's special counsel "denied any specific recollections" of his conversation with the courtroom deputy.  *See* Appellants' Opening Brief, p. 12.  As the transcript of the deposition of Phillip Young proves, that is a demonstrably false statement.

communications with judicial staff concerning routine administrative matters do not raise any inference of bias."); *Allen,* 2009 Bankr. LEXIS at *26-30 (a telephone call between a judge and counsel to discuss scheduling of an emergency hearing did not warrant recusal). This is even more true where the communication was between counsel and the courtroom staff, as opposed to the judge himself. *In re Parson,* 2018 Bankr. LEXIS 830, at *12 (Bankr. N.D. Tex. 2018) ("Importantly, the Court's courtroom deputy and the intake staff at the clerk's office have been the only means of communication between the Court, [counsel], and the Debtor.").

Moreover, even if the purpose of the communication from the Trustee's counsel to the Bankruptcy Court's staff had been to express a security concern about Mr. Manookian, or if the Bankruptcy Court's staff interpreted such conversation as expressing a security concern, that communication would not warrant recusal.  The United States Bankruptcy Appellate Panel considered and rejected a nearly identical argument in *Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214 (9th Cir. BAP 1996).  Among the reasons cited for recusal by the movant in *Seidel* was that "the judge admitted that his secretary had received calls from persons attending the proceedings who expressed concerns about their safety."  *Seidel*, 194 B.R. at 224.  However, the appellate court concluded:  "There is no merit to the contention that the judge should be

disqualified because of phone calls to his secretary regarding security. The judge has an obvious administrative responsibility concerning the security of the courtroom. This includes protecting not only the judge personally, but also the parties, the attorneys, the witnesses, and the spectators." *Id.* The 9th Circuit BAP elaborated: "Here the expressions of concern were made to the judge's secretary, and not to the judge personally. The security imposed was hardly exceptional. These facts would not cause a reasonable person to question the judge's impartiality." *Id.*[6]

Thus, whether the Bankruptcy Court's staff considered the telephone call from the Trustee's special counsel to be merely an administrative function, as counsel believed, or whether they considered it to be a statement of concern for security, as the Appellants allege, it was not an *ex parte* communication that any reasonable person would believe could taint Judge Walker's impartiality. It involved an administrative matter and its impact upon the Bankruptcy Court, if any, was regarding an administrative matter, *i.e.* the physical location for depositions. The Bankruptcy Court expressly stated that it has formed no opinion about the veracity of any security concern, much less any substantive matter.

---

[6] In the *Seidel* case the Court's initial security measure was simply to post a United States Marshal in the courtroom for each hearing.

C.    THE    BANKRUPTCY    COURT    CONDUCTED    NO
EXTRAJUDICIAL RESEARCH

In their Recusal Motion the Appellants also (and without any factual basis) accuse Judge Charles Walker of engaging in "extrajudicial research" which biased him against Brian Manookian and/or the parties to the adversary proceeding.  There is no evidence to support the Appellants' allegation in this regard.  Rather, this allegation is based upon an assumption that the Appellants draw from a statement made by Judge Walker at a hearing on March 17, 2022 regarding Brian Manookian's "past behavior before the tribunals."  In contrast to the presupposition and conjecture that led the Appellants to accuse Judge Walker of extrajudicial research, the Bankruptcy Judge clearly described the sources of information that led him to that statement, all of which was in the record of this bankruptcy case.  *See* Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker, Appendix, RE 10-1 Page ID # 239.

As the Bankruptcy Court summarized, the record *in this bankruptcy case* is replete with references to sanctions issued against Brian Manookian by state and federal courts for:

-    Acting in bad faith and disrupting the litigation process
-    Engaging in a pattern of obfuscation
-    Failure to provide credible explanations
-    Engaging in conduct that essentially amounted to a flouting of the Court's Orders
-    Repeatedly ignoring the clear directives of the Court
-    Conducting himself in a reckless manner

Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker, Appendix, RE 10-1 Page ID # 239.

The Bankruptcy Court has denied conducting any extrajudicial research about Brian Manookian or any of the Appellants in this matter. Instead, it has explained the sources for its comments concerning Mr. Manookian's "past behavior before the tribunals" and has identified those sources from within the record of this bankruptcy case. There is no evidence to dispute the Bankruptcy Court's explanation; therefore, the Bankruptcy Court properly denied the Recusal Motion on the grounds that it had not conducted extrajudicial research.

### D. ONE OF THE APPELLANTS, BRIAN MANOOKIAN, LACKS STANDING

The Appellee must again point out that this appeal is being advanced in part by Brian Manookian, who is not a party to the underlying adversary proceeding and has no standing in this matter. "In order to have standing to appeal a bankruptcy court order, an appellant must be a 'person aggrieved' by the bankruptcy court's order." *Simon v. Amir (In re Amir)*, 436 B.R. 1, 9-10 (6th Cir. B.A.P. 2010) (citing *Fidelity Bank, Nat'l Ass'n v. M.M. Group, Inc.,* 77 F.3d 880, 882 (6th Cir. 1996)). "This doctrine limits standing to those persons who 'have been directly and adversely affected pecuniarily by the order. . . . Only when the order directly diminishes a person's property,

increases his burdens, or impairs his rights will [an appellant] have standing to appeal.'" *Id.* at 10 (quoting *Fidelity Bank*, 77 F.3d at 882; citing *Travelers Cas. & Sur. v. Corbin (In re First Cincinnati, Inc.),* 286 B.R. 49, 51 (6th Cir B.A.P. 2002)).  "The burden of proving that a party is a 'person aggrieved' is on the appellant asserting standing to pursue an appeal." *Id.* (citing *Fidelity Bank*, 77 F.3d at 882).

In this case, Brian Manookian is not a defendant in the adversary proceeding; therefore, he has not been "directly and adversely affected pecuniarily by the order" and has no standing to pursue this appeal.  Since the other Appellants have standing to pursue the appeal, this issue is not determinative to the outcome of this appeal.  However, this Court should find that Mr. Manookian lacks standing to pursue this appeal so as to clarify this procedural matter for the seemingly inevitable future appeal of this matter.

### E.    THE APPEALLANTS FAILED TO IDENTIFY ANY ERROR IN THE DISTRICT COURT'S FINDING

Finally, it is worth noting that the Appellants have failed, and do not even attempt, to identify any error in the District Court's finding. Rather, Appellants have filed an identical brief restating their previous arguments. The lack of effort to even attempt to find an error in the District Court's

finding further demonstrates that this is yet another attempt in Appellants long string of delay tactics to delay the administration of justice.

## VII.  CONCLUSION

The Appellants have failed to support their allegations with any admissible evidence. Judge Charles Walker has demonstrated no bias against any of the Appellants.   Judge Charles Walker had no communications concerning this case or any of the Appellants with any party, and the courtroom staff had no impermissible *ex parte* communications concerning this case.  Judge Charles Walker did not conduct any extrajudicial research regarding this matter. Nevertheless, Brian Manookian (who is not even a party to this adversary proceeding) and the other Appellants continue to press their unfounded allegations against a sitting bankruptcy judge in order to delay the administration of justice in this case.  For all of the foregoing reasons, the District Court's Order should be affirmed, and this appeal should be denied.

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
THOMPSON BURTON PLLC
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
Tel:  615-465-6000
phillip@thompsonburton.com

## X.    CERTIFICATE OF COMPLAINCE WITH FED. R. APP. P. 32(a)(7)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,068 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac 2011 in 14-point Times New Roman Font.

## XI.    CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on this 28th day of June 2024. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties listed below. Parties may also access this filing through the Court's electronic filing systems.

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

## XII.  ADDENDUM

Pursuant to 6 Cir. R. 28(b)(1)(A)(i), Appellant hereby designates the following relevant documents from the originating court:

- Motion to Disqualify Judge Charles Walker, Appendix, RE 10-1, Page ID # 198;

- Order Denying Motion to Disqualify Bankruptcy Judge Charles Walker, Appendix, RE 10-1 Page ID # 239;

- Hearing Transcript (Attached on as <u>Exhibit 1</u> to the Recusal Motion, Appendix, RE 10-1, Page ID # 174-175); and

- Memorandum and Order, RE 15, Page ID # 1851.